**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELISABETH RABNER, an individual; and BRIAN KAPLAN, and individual, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 15-1313 |
| | ) | Judge Nora Barry Fischer |
| WILLIAM TITELMAN, Agent under Power of Attorney and as Trustee; and, FRED M. KAPLAN, Agent under Power of Attorney and as Trustee, | ) ) ) ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Sad to say, this case reads as if it is a Hollywood soap opera script with family members squabbling over their prospective interests in various trust funds, one of which is valued at over $2,000,000.00. (Docket No. 1). The only present beneficiary of the trusts is non-party Joan Kaplan, ("Mrs. Kaplan"), an 89-year old widow that lives in Beverly Hills, California, and suffers from macular degeneration, among other ailments. (Docket Nos. 13 at ¶ 3-4; 43-1 at ¶ 3). Two of her grandchildren, Plaintiffs Elisabeth Rabner and Brian Kaplan, (collectively, "Plaintiffs"), have sued their uncles William Titelman and Fred Kaplan, (collectively, "Defendants"), under a breach of contract theory in an effort to enforce a purported agreement under which Plaintiffs would have been paid $400,000.00 immediately rather than wait until Mrs. Kaplan's death to recover their share of the remaining funds in the trust as residual beneficiaries. (Docket Nos. 1). Plaintiffs name their uncles as Defendants but they are not sued individually. (*Id.*). Rather, they are sued in their capacities as trustees and power of attorney for their mother. (*Id.* at ¶¶ 3-4).

Presently before the Court is a Motion to Dismiss filed by Defendants[1] raising a host of defenses, including, among others, failure to join indispensable parties and improper venue. (Docket Nos. 10-13). The Motion has been fully briefed with each side supporting their positions with affidavits and other documentary evidence. (Docket Nos. 10-13; 31-32; 34; 39). The Court held a motion hearing on December 14, 2015 and the official transcript of same was filed with the Court on January 7, 2016. (Docket Nos. 40, 41). The parties were also granted leave to make supplemental filings which the Court has reviewed as part of its analysis. (Docket Nos. 49, 50).

After careful consideration of all of the parties' arguments and for the following reasons, Defendants' Motion to Dismiss will be granted as the Court finds that Plaintiffs have failed to join necessary parties and that venue in this Court is inappropriate as a substantial part of the events as to this breach of contract claim did not occur in this District. While the venue statute, 28 U.S.C. § 1406, permits the Court to transfer a case to an appropriate venue, this Court declines to do so as it is not clear that diversity jurisdiction would lie over any breach of contract claim after all of the necessary parties are added to this litigation. Accordingly, a transfer of this matter to the U.S. District Court for the Central District of California, Los Angeles Division, is not a viable option. Rather, as the Court advised the parties and their counsel at the motion hearing in this case, if this case is refiled at all, it would be more appropriately filed in the Probate Department of the Superior Court in Los Angeles County, much closer to where Mrs. Kaplan lives, as she is a necessary party with legitimate health problems, including Plaintiffs' allegations that she may have capacity issues, which Defendants seemingly dispute.

II. RELEVANT BACKGROUND

---

[1] The motion to dismiss was originally filed by Kaplan but the Court later granted a motion to join filed by Titelman. (Docket No. 27).

It is unfortunate that the hard work of the prior generations of the Titleman[2] and Kaplan[3] families to create this wealth and their considerable planning to leave it for the benefit of their offspring and other heirs has devolved into this type of dispute.[4]   Perhaps, the old adage that "money is a curse" is true?  Regardless, this Court must perform its duty to analyze and rule on the pending matters.

Mrs. Kaplan is 89 years old and has health problems including diminished eyesight from macular degeneration.  (Docket No. 13 at ¶ 3; 34-1 at ¶¶ 3, 11).   The family relationships are largely uncomplicated.  Mrs. Kaplan has three sons: William Titleman; Fred Kaplan; and Tom Kaplan.  (Docket No. 13 at ¶ 2). Fred Kaplan is a certified public accountant and lives in Beverly Hills, California.  (Docket No. 12 at ¶ 2).  Mrs. Kaplan has resided with him and his family for the past few years.  (Docket Nos. 13 at ¶¶ 3-4; 34-1 at ¶ 3).  William Titleman is a retired Pennsylvania lawyer and alleged to be a Florida resident.  (Docket Nos. 1 at ¶ 3; 17-2).  Given his retirement, he now lives primarily in Greece with travels throughout the Far East.  (Docket Nos. 34-1 at ¶ 10; 34-3 at ¶¶ 3-4).  Tom Kaplan is Plaintiffs' father.  (Docket No. 13 at ¶ 2).  He is not a party to this suit at the present time.  (Docket No. 1).  Tom was previously a Pittsburgh resident but it is unclear from the record where he currently lives.  (Docket No. 32-4).  Mrs. Kaplan has 8 grandchildren to her 3 sons.  (Docket Nos. 13 at ¶ 2; 34-1 at ¶ 2).  Among them are: Plaintiffs Elisabeth Rabner, a Pittsburgh, Pennsylvania resident and Brian Kaplan, a Washington,

---

[2]      The Court notes that Mrs. Kaplan was first married to E. Robert Titleman, who was the father of all three of her sons. (Docket No. 32-4). Mr. Titleman passed away in 1954.  (*Id.*).  The Court was informed at the motion hearing that Mr. Titleman had an impressive career and established a "Titleman Trust" that is still providing funds for his issue but this is not one of the trusts that is in dispute here.  (Docket No. 41 at 18-19).

[3]      The Court notes that Mrs. Kaplan married her second husband Irving Kaplan in 1955.  (Docket No. 32-4).  His father and grandfather were engineers from Rankin, Pennsylvania who started the company that became Copperweld Industries and was later purchased by Fushi International.  (Docket No. 41 at 6-7).  Mr. Kaplan had a distinguished career himself and served on the Board of Directors of Copperweld prior to his passing in 1989.  (*Id.*).

[4]      The Court encouraged the parties to sit down and resolve this dispute outside of the courtroom through the Court's ADR Program or by a referral to a United States Magistrate Judge but Defendants declined that offer.  (*See* Docket No. 41).

D.C. resident. (Docket Nos. 1 at ¶¶ 1-2). Aside from Plaintiffs' half-brother, Max, who is a Pennsylvania resident, the domiciles of the other five grandchildren[5] are not firmly established in the Court's record. (Docket No. 34-1 at ¶ 2). None of them have been added to this lawsuit at the present time. (*See* Docket No. 1). Mrs. Kaplan lived in Pittsburgh before she moved to Beverly Hills around two years ago. (Docket Nos. 13 at ¶¶ 3-4; 34-1 at ¶ 3). At that time, she and Elisabeth Rabner were close and she (Elizabeth) assisted her grandmother in a multitude of ways, including being granted a durable power of attorney. (Docket Nos. 32; 41 at 16; 49-1).

At its core, this lawsuit surrounds two trusts, one of which is funded by approximately $2,100,000.00, and an unfunded trust that was established for the purpose of moving the funds from the first trust into the second one. (Docket Nos. 1 at ¶ 7; 12; 32 at 5; 41 at 31). The parties contest why the second trust was established as Defendants maintain that it was developed as part of comprehensive estate planning in an effort to avoid a substantial "generation skipping" tax of nearly $750,000.00 and to consolidate a number of trusts into one while Plaintiffs suggest that it is a "power move" by their uncles to assert more control over the family assets. (Docket Nos. 10, 32, 41).

The Irving M. J. Kaplan Trust, (the "Kaplan Trust"), is a Florida[6] trust funded with approximately $2,100,000.00. (Docket Nos. 32-4; 32-5). The Kaplan Trust has two co-trustees, Mrs. Kaplan and non-party, the Bessemer Trust Company of Florida, which is, unsurprisingly, based in Florida. (*Id.*). The only present beneficiary of the trust is Mrs. Kaplan and she draws on this account for maintenance purposes, around $20,000 per month. (Docket No. 13 at ¶ 4; 41 at 22). All of Mrs. Kaplan's 8 grandchildren are residual beneficiaries to this trust. It is

---

[5]     The other grandchildren include: Emily Titelman; Ethan R. Titelman; Greta Titelman; Nina Kaplan; and Naomi Kaplan. (Docket Nos. 32-5; 39-2 at 4).

[6]     The Kaplan Trust was initially established many years ago in Pittsburgh, Pennsylvania, but all parties agree that it was moved to Florida in 1990. (Docket No. 34-1 at ¶ 5, Ex. A).

uncontested that none of the residual beneficiaries have any present right to the trust funds and that whatever money they will ultimately receive from the trust will not be distributed until their grandmother passes away. (*Id.*). None of Mrs. Kaplan's three sons have a residual interest in this trust. (*Id.*).

William Titleman and Fred Kaplan were each granted a durable power of attorney by their mother in California in 2014, pursuant to which they are able to assist her in managing her financial affairs. (Docket No. 12 at ¶ 5, Ex. A). Through these powers, they worked with a California-based estate lawyer, Jonathan Reich, Esquire, to establish a revocable trust in California, ("2014 Revocable Trust").[7] (*Id.*). Mrs. Kaplan is named as the settlor for the 2014 Revocable Trust and the co-trustees include Mrs. Kaplan, William Titleman and Fred Kaplan. (*Id.* at Ex. B). Plaintiffs' father, Tom Kaplan, is not presently a trustee but will become one upon the death of his mother. (*Id.*; Docket No. 12 at ¶ 6). Like the other trust, the only present beneficiary of the 2014 Revocable Trust is Mrs. Kaplan. (Docket No. 12). Through this trust, Mrs. Kaplan makes gifts to her 3 sons; hence, the avoidance of the "generation skipping" tax that would purportedly be assessed if the Kaplan Trust was followed in its present form. (*Id.* at Ex. B). However, according to Plaintiffs, the 2014 Revocable Trust remains unfunded which provides the backdrop for the alleged contract at issue in this case. (Docket Nos. 32 at 5; 41 at 31).

As noted, the estate plan involved moving the $2,000,000.00 in assets from the Kaplan Trust to the 2014 Revocable Trust. (Docket Nos. 1 at ¶ 7; 32 at 5; 41 at 31). In order to complete this transaction, co-trustee Bessemer Trust Company of Florida had to agree to same. (Docket No. 1 at ¶ 9). According to Plaintiffs, Bessemer Trust Company of Florida was willing

---

[7]     Mrs. Kaplan's will was also revised around the same time which is not directly relevant here but has likewise caused some consternation between the parties. (*See* Docket Nos. 32, 39, 41).

to release the funds from the trust but only if all of the other residual beneficiaries released their interests in same. (*Id.*). Plaintiffs have not alleged that the residual beneficiaries signed the required releases and it appears that no such releases have been signed. (*See* Docket No. 39-2). Rather than agree to sign, Plaintiffs and Defendants engaged in what they describe as "settlement negotiations" with Elisabeth Rabner's husband, local lawyer Monte Rabner, Esquire, as the point person on the negotiations for Plaintiffs with Defendants largely negotiating through Fred Kaplan and their California-based estate lawyer, Mr. Reich. (Docket Nos. 32-1; 32-2; 32-3). These individuals engaged in significant back and forth through phone calls, emails, text messages and other correspondence. (*Id.*).

Ultimately, Plaintiffs thought that they struck a deal upon receipt of an offer from Defendants, through their lawyer, of a one-time payment of $400,000, i.e., $200,000 each, in exchange for a release vis-à-vis their interests in the Kaplan Trust as well as waiving any future litigation and their rights under the 2014 Revocable Trust. (Docket Nos. 1; 32-1). Indeed, Monte Rabner sent an elated text message to Fred Kaplan on June 30, 2015 accepting the deal. (*Id.*). Mr. Reich later sent a Settlement Communication to Mr. Rabner on July 15, 2015 outlining the deal but subsequent correspondence indicated that there were problems with the structure. (Docket No. 32-2). Notably, there are 8 listed contingencies set forth in the Settlement Communication, including, among other things that: Plaintiffs sign the waiver allowing the transfer of funds between trusts; Mrs. Kaplan survive the transfer by 30 days; Elisabeth Rabner return jewelry to her grandmother; and that Plaintiffs execute various legal documents. (*Id.* at (a)-(h)). Consequently, this deal never came to fruition and repeated requests by Plaintiffs to Defendants and Mr. Reich for them to send the legal documents were ignored. (Docket No. 1 at ¶¶ 15-18).

Unsatisfied with the outcome of these negotiations, and believing that they formed an agreement which their uncles breached, Plaintiffs brought this lawsuit to recover the $400,000.00 that to which they believe they are now entitled. (Docket No. 1). Those funds, however, remain within the Kaplan Trust, situated in Florida, which is still extant as the transfer of assets to the 2014 Revocable Trust did not occur. (The funds cannot be accessed without the consent of the co-trustees, Mrs. Kaplan and the Bessemer Trust Company. (Docket No. 1 at ¶ 9)). Further, Mrs. Kaplan has filed two affidavits with the Court indicating that she never agreed to give Plaintiffs $400,000.00, that they do not need the money, and that Elisabeth Rabner did not return her jewelry as she requested. (Docket Nos. 13 at ¶¶ 4, 7; 34-1 at ¶ 8).

III. LEGAL STANDARDS

As noted above, Defendants have raised several challenges to this suit via Rule 12 motions. (Docket Nos. 10, 11). However, in the interests of judicial economy, the Court focuses on the defenses under Rules 12(b)(7), failure to join necessary parties, and 12(b)(3), improper venue, as these motions are dispositive and compel the Court to dismiss this action.

A.      *Rule 12(b)(7)*

Pursuant to Rule 12(b)(7), the Court may dismiss a case for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). In reviewing this type of motion, the Court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009). However, "[e]vidence outside the pleadings may be considered" by the Court. *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 814 (W.D. Pa. 2013) (citation omitted). "The moving party bears the burden of showing that a nonparty is both necessary and indispensable." *US Investigations Services, LLC v.*

*Callihan*, Civ. A. No. 11-355, 2012 WL 933069, at *1 (W.D. Pa. 2012) (citation omitted). If joinder of an indispensable nonparty is not feasible because the addition of the party would defeat diversity jurisdiction, the case must be dismissed. *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319-20 (3d Cir. 2007).

      B.    *Rule 12(b)(3)*

Generally, in deciding a motion to dismiss for improper venue under Rule 12(b)(3), a court must accept as true the allegations in the complaint, unless controverted by the defendant's affidavits. *Whipstock Natural Gas Servs., LLC v. Trans Energy, Inc.*, Civ. A. No. 08–1084, 2008 WL 4287158, at *2 (W.D. Pa. Sept. 17, 2008) (citation omitted). This Court may evaluate facts outside the complaint to determine proper venue; however, all reasonable inferences must be drawn in the plaintiff's favor. *Id.* at *2 (citations omitted). The party moving for dismissal or transfer based upon improper venue bears the burden of proof. *See e.g.*, *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005). If venue is improper, a district court can either dismiss the case or transfer it to a district in which it could have originally been brought. 28 U.S.C. § 1406(a).

  IV. DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint arguing that they failed to join indispensable parties and that venue in this District is improper. (Docket Nos. 11, 34, 50). Alternatively, they seek a transfer of this matter to the United States District Court for the Central District of California. (*Id.*). Plaintiffs oppose both dismissal of their case and the suggested transfer. (Docket Nos. 32, 39, 49). Having fully considered the parties' disputes, the allegations set forth in Plaintiffs' Complaint, the evidence of record, and oral argument from

counsel, the Court agrees with Defendants that this case must be dismissed for failure to join indispensable parties and for improper venue.

A.     *Rule 12(b)(7)*

The Court first addresses the parties' disputes concerning the Rule 12(b)(7) motion, under which Defendants argue that both Mrs. Kaplan and Plaintiffs' father, Tom Kaplan are necessary parties to this case and Plaintiffs counter that neither are necessary as their alleged contract was made with Defendants while acting in their capacities as trustees and through the power of attorney granted by Mrs. Kaplan. (Docket Nos. 11, 32, 34, 39, 41, 49, 50).

The analysis of a Rule 12(b)(7) motion typically begins with reference to Rule 19. *See Wynn v. Nat'l Corrective Grp., Inc.*, Civ. A. No. 14-200, 2014 WL 3907133, at *1 (W.D. Pa. Aug. 11, 2014) (quoting *Enter. Bank & Trust v. Lipton*, 2013 WL 394868 (W.D. Pa. Jan.31, 2013) ("Consideration of a motion to dismiss brought under Rule 12(b)(7) 'naturally begins with Rule 19.'")). However, Plaintiffs have framed their case as if they are suing Defendants in their capacities as "trustees" and "power of attorney" without joining their grandmother, Mrs. Kaplan, which raises threshold capacity issues under Rule 17. (Docket No. 1 at ¶¶ 3-4).

Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). That section further delineates that a "trustee," among others, "may sue in their own names without joining the person for whose benefit the action is brought." *Id.* A "power of attorney" is not among those listed in the Rule. *See id.* "A power of attorney is an instrument granting someone authority to act as agent or attorney-in-fact for the grantor." *Prudential Ins. Co. of Am. v. Eisen*, No. CIV. A. 11-05872, 2012 WL 876747, at *4 (E.D. Pa. Mar. 15, 2012) (quoting *In re St. Felix*, 436 B.R. 786, 789 (Bankr. E.D. Pa. 2010)). The United States Court of Appeals for the Third Circuit has held that an individual holding a power

of attorney as agent or attorney-in-fact is not the real party in interest for Rule 17 purposes but that a suit may be brought by the attorney-in-fact *on behalf of the principal.  See Choi v. Kim*, 50 F.3d 244, 247 (3d Cir. 1995) (real party in interest is the principal under the power of attorney relationship and not the agent); *cf. Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043, 1046-47 (E.D. N.Y. 1994), *aff'd*, 58 F.3d 857 (2d Cir. 1995) ("A person authorized to bring suit solely on the basis of a power of attorney is  not a real party in interest; courts have uniformly denied such a party the right to sue in its own name."); *Bourdeau et al.*, Federal Procedure, Lawyer's Edition, 25 Fed. Proc., L. Ed. § 59:50 (Mar. 2016) ("One who is an agent or attorney-in-fact merely for the purpose of bringing suit is not a real party in interest and, accordingly, cannot conduct litigation in his or her own name.").  Following this precedent, an individual named as a defendant in the capacity as "power of attorney" for a principal cannot be considered the real party in interest and the principal must be joined as a party.  *Id.*

The power of attorney was granted by Mrs. Kaplan in the state of California, so the Court must look to California law to determine the scope of the rights extended to the holders of same. (Docket No. 12-1). Relevant here, California state and federal courts have uniformly held that a broad grant of rights to an attorney-in-fact to litigate claims on the principal's behalf does not authorize that individual to act as an attorney-at-law for the principal in court.  *See e.g., Lomax v. City of Antioch Police Officers*, 2011 WL 4345057, at *3-4 (N.D. Cal. Sept. 14, 2011) (pro se holder of durable power of attorney does not have standing to prosecute action on behalf of principal without attorney-at-law.  These courts have reasoned that a non-lawyer attorney-in-fact cannot sign pleadings or otherwise appear as a legal representative on behalf of the principal in litigation.  *See e.g., In re Foster*, 2012 WL 6554718, at *5 (B.A.P. 9th Cir. Dec. 14, 2012); *Drake v. Superior Court*, 21 Cal. App. 4th 1826, 26 Cal. Rptr. 2d 829 (Cal. Ct. App. 1994)

(attorney-in-fact "cannot use the statutory form power of attorney as a device to practice law for his principal."). Rather, the attorney-in-fact must engage an attorney who is duly admitted to the Bar to represent the principal in the litigation, at which point the attorney-in-fact may act on the principal's behalf. *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455761, at *14 (N.D. Cal. Aug. 22, 2006) (citations omitted) ("When an attorney-at-law represents a party, an attorney-in-fact may prosecute the action on that party's behalf."). This jurisdiction is no different as our Court of Appeals has held that federal courts recognize the same principles including that a non-lawyer holding a power of attorney may not represent the principal in federal court. *See Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (citations omitted) ("power of attorney for her father may confer certain decision-making authority under state law, but it does not permit her to represent him pro se in federal court."); *see also Hoover v. Wells Fargo Bank, et al.*, Civ. A. No. 14-139, Docket No. 2 (W.D. Pa. Jan. 30, 2014) (quoting same).

In this case, Mrs. Kaplan, acting as principal, granted a durable power of attorney under California law to two of her sons, i.e., Defendants, to act as her agent and attorney-in-fact. (*See* Docket No. 12-1 at 1 ("JOAN M. KAPLAN ('the principal') hereby appoints FRED M. KAPLAN and WILLIAM TITLEMAN (collectively, the "agent") as the principal's true and lawful attorney-in-fact for the principal and in the principal's name, place and stead'). This power of attorney grants Defendants the authority "to demand, arbitrate, and pursue litigation on the principal's behalf concerning all rights and benefits to which the principal may be entitled." (*Id.* at ¶ 6). But, neither have the capacity to act as Mrs. Kaplan's attorney-at-law in this litigation. To this end, William Titelman is a retired lawyer and a member of the Bar of the Supreme Court of Pennsylvania but he is not admitted to practice law in this federal district

court.[8]  (Docket Nos. 34-1 at ¶ 10; 34-3 at ¶¶ 3-4).  His brother, Fred Kaplan, is a certified public accountant and not a lawyer.  (Docket No. 12 at ¶ 2).

To conclude, although Plaintiffs have attempted to frame their case as if they have not sued their grandmother, Mrs. Kaplan, she is the real party in interest and must be joined as a party[9] for this case to proceed and the claims against Defendants in their capacities as power of attorney must be dismissed.  *See* FED. R. CIV. P. 17(a).  Since Mrs. Kaplan has not been named as a defendant, Plaintiffs have not served her with process and she is not presently subject to the jurisdiction of this Court.  Further, if she is added as a party, neither Defendant is capable of representing Mrs. Kaplan in this litigation such that she must either engage her own counsel or they can utilize their power of attorney to engage counsel on her behalf.  Her capacity has also been questioned by Plaintiffs such that the appointment of a guardian may become an issue.  *See* FED. R. CIV. P. 17(c).

Moving on, the Court reaches the same result as to Mrs. Kaplan and others when it reviews the necessity of joining them as parties under the Rule 19 test.  The analysis pursuant to Rule 19 prompts the Court to determine if the non-party is a "required party" under Rule 19(a)(1) and then to evaluate whether joinder of an indispensable party is feasible or if the matter should be dismissed under Rule 19(b).  *See General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007).

---

[8]    William Titelman is an active member of the Bar of Pennsylvania.  *See* Docket No. 17-5; *Pennsylvania Disciplinary Board*, "attorney search," *available at:* http://www.padisciplinaryboard.org/look-up/pa-attorney-info.php?id=32698&pdcount=0  (last visited 4/20/16).  However, he is not a member of the Bar of the United States District Court for the Western District of Pennsylvania as his name does not appear on the rolls maintained by the Clerk of Court.

[9]    The Court recognizes that Mrs. Kaplan has participated in this litigation given her submission of affidavits, but it cannot be said that she expressly ratified the activities of her sons defending this action in their capacity as power of attorney.  *See ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987) (citations omitted) ("A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result.").

With respect to the first prong of the compulsory joinder test, it is clear that "complete relief" could not be accorded to Plaintiffs via a breach of contract lawsuit naming only their uncles as Defendants in their capacities as trustees and power of attorney for their mother. *See General Refractories Co.*, 500 F.3d at 313 ("As should be apparent, we necessarily limit our Rule 19(a)(1) inquiry to whether the district court can grant complete relief to persons *already named as parties* to the action; what effect a decision may have on absent parties is immaterial.") (emphasis in original). Here, Plaintiffs cannot recover $400,000.00 from Defendants because they are only trustees of an unfunded trust and are otherwise not parties to the alleged settlement agreement that they negotiated as power of attorney on behalf of their mother – she would be the appropriate party to sue for the breach. *See e.g., Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. CIV.A. 09-5466, 2013 WL 5635992, at *4 (E.D. Pa. Oct. 15, 2013) (citation omitted) (Under Pennsylvania law "one cannot be liable for a breach of contract unless one is a party to that contract."). It further appears that even if Mrs. Kaplan was joined as a Defendant, as this Court has ruled above, Plaintiffs could not be awarded complete relief without the joinder of their other relatives that have a stake in the trusts and the Bessemer Trust Company of Florida, all of whom must approve the transfer. *Id.* It is likewise obvious that any resolution of this lawsuit would affect all of those third parties, and particularly Mrs. Kaplan, who is living off of the funds in the Kaplan Trust at present and has extraordinary medical needs. *Id.* (Rule 19(a)(2) "requires the court to take into consideration the effect that resolution of the dispute among those parties before it may have on any absent parties."). Indeed, it appears that a resolution of this lawsuit could not be completed without all of these additional non-parties approving the deal.

Returning to the facts, Plaintiffs seek to recover $400,000.00 that they claim was promised to them by their uncles during their negotiations about transferring funds from the

Kaplan Trust to the 2014 Revocable Trust. (Docket No. 1). But, their uncles do not have unfettered access to that money and a judgment against them in their capacities as trustees of an unfunded trust and power of attorney would have no real value. (*See* Docket Nos. 12-1; 12-2). Indeed, the $400,000.00 remains in the Kaplan Trust and the deal that Plaintiffs and Defendants purportedly agreed to is subject to several contingencies which have not yet been satisfied, as they acknowledge. (Docket Nos. 1 at ¶¶ 7-10; 32-2). Again, the co-trustees, Mrs. Kaplan and Bessemer Trust Company, would have to sign off on any transfer of funds between the trusts. Even assuming that Mrs. Kaplan is bound by her sons' actions as power of attorney on her behalf, the Bessemer Trust Company of Florida will only release the funds directly from the Kaplan Trust to the 2014 Revocable Trust and upon the agreement and release of all of the residual beneficiaries, most of whom are not before the Court. (*See* Docket No. 39-2). Of course, the two residual beneficiaries that are here, Plaintiffs, have not yet signed the necessary releases. (*See* Docket No. 1 at ¶¶ 10-12). Additionally, acting as trustee, the Bessemer Trust Company of Florida has a fiduciary obligation to the trust beneficiaries, primarily Mrs. Kaplan, and given her advanced age, failing health and possible incapacity, as argued by Plaintiffs, this entity would be within its rights to refuse to go forward with this arrangement. *See e.g.*, FLA. STAT. ANN. § 736.0801 (West 2007) ("Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this code.").

Continuing, even if the money was transferred out of the Kaplan Trust, the supposed deal still has some additional potential roadblocks because Defendants and Mrs. Kaplan, as co-trustees of the 2014 Revocable Trust, would need to approve the subsequent transfer to Plaintiffs. (Docket No. 12-2). Plaintiffs' father, Tom, will become a trustee upon his mother's death and is

a beneficiary of this trust as well. (*Id.*). Regardless, Mrs. Kaplan has stated in two affidavits filed with the Court that she never agreed to distribute $400,000.00 to Plaintiffs and would not do so now because Elisabeth Rabner did not return her jewelry. (Docket No. 13 at ¶¶ 4, 7, 34-1 at ¶ 8). So, issues arise as to whether Defendants were acting as trustees or pursuant to the power of attorney during the second transfer from the 2014 Revocable Trust to Plaintiffs. It is unclear what the result would be; but the Court need not quibble over these details given that the deal's contingencies under the Kaplan Trust have not been satisfied.

All told, the Court finds that Mrs. Kaplan, the Bessemer Trust Company of Florida and the individuals from whom the releases were sought, i.e., Plaintiffs' father, five cousins and one sibling, are all necessary parties to this litigation. (Docket Nos. 39-2). All of these absent parties would be prejudiced as described above if the present action would proceed without them. Further, the Court is unable to lessen such prejudice through protective provisions in the judgment, shaping the relief or other measures. *See* FED. R. CIV. P. 19(b)(1)-(2). A judgment against the named Defendants only would be of no real value because of all of the contingencies that have yet to be satisfied – at most, Plaintiffs could obtain declaratory judgment[10] of their rights vis-à-vis their uncles but not the $400,000.00 that they crave. *See* FED. R. CIV. P. 19(b)(3)-(4).

Next, Rule 19(b) sets forth whether the Court should permit the litigation to proceed when the joinder of an otherwise required party is not feasible because doing so would either destroy subject matter jurisdiction or violate venue principles. FED. R. CIV. P. 19(b). The issue of venue in this District is problematic as the Court discusses in the next section of this

---

[10] This Court has discretion to decline to exercise subject matter jurisdiction over a declaratory judgment action and would do so in this case, if it did not warrant dismissal for the other reasons set forth in this Memorandum Opinion. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 137 (3d Cir. 2014); *see also* 28 U.S.C. § 2201(a).

Memorandum Opinion. If the indispensable parties are joined, subject matter jurisdiction will also be lacking based on the information before this Court.

In this regard, Plaintiffs aver that subject matter jurisdiction is premised on the theory of diversity jurisdiction which requires complete diversity of the parties. (Docket No. 1 at ¶ 5 (citing 42 U.S.C. § 1332(a)(1)). Plaintiffs are citizens of Pennsylvania and the District of Columbia. (*Id.* at ¶¶ 1-2). The named Defendants are citizens of California and, possibly, Florida, Greece or some other country in the Far East. (*Id.* at; Docket Nos. 1 at ¶¶ 3-4; 17-2; 34-3 at ¶ 6). The Court understands that Mrs. Kaplan is domiciled in California and that the Bessemer Trust Company of Florida is a citizen of at least Florida such that their joinders as defendants may not defeat diversity jurisdiction. However, the information presently before the Court suggests that at least two of the necessary parties, Plaintiffs' father Thomas Kaplan and half-brother, Max Kaplan, may reside in Pennsylvania. (Docket Nos. 32-4; 34-1 at ¶ 2). The Court lacks information concerning the domiciles of the five cousins such that it cannot determine if their joinders would also defeat diversity. As it is Plaintiffs' burden to demonstrate that there is complete diversity of the parties, and the Court has deemed that there are necessary parties that must be joined that would defeat diversity, this case must be dismissed, without prejudice, for lack of subject matter jurisdiction. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418-19 (3d Cir. 2010).

For all of these reasons, Defendants' motion to dismiss for failure to join indispensable parties must be granted and the Complaint will be dismissed on this basis.

B.      *Rule 12(b)(3)*

The Court also considers the motion to dismiss for improper venue which alternatively provides an equally compelling reason to dismiss this case. (Docket No. 10). Defendants argue

that venue in this District is improper because they do not reside in Pennsylvania and none of the events or omissions giving rise to the breach of contract claim against them took place in this District. (Docket Nos. 11, 34, 50). Plaintiffs concede that the $400,000.00 they are trying to acquire is not located in this District but remains in the Florida-based Kaplan Trust. (Docket Nos. 32, 39, 49). Yet, they counter that there is a substantial connection to this District as the negotiations took place over telephone calls, emails and other correspondence while Plaintiffs, and/or their agent, Monte Rabner, Esquire, were located in Pennsylvania and Defendants were outside of this District. (*Id.*). Once again, the Court agrees with Defendants' position.

The focus of the Court's inquiry is on whether a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1). To conduct this evaluation, the Court must consider the nature of the dispute and, as this is a contract action, looks to the location of the events surrounding the contract's formation, execution and breach. *See Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).

With respect to contract formation, it is true that the negotiations here crossed state lines and that one side of the alleged deal was located in Pittsburgh as Plaintiff Elisabeth Rabner and her husband, Attorney Monte Rabner, were in this District. (Docket Nos. 32-1; 32-2; 32-3). Meanwhile, Defendant Kaplan and Attorney Jonathan Reich were in California. (*Id.*). Mr. Rabner reportedly accepted this deal via a text message that he sent from Pittsburgh to Fred Kaplan. (Docket No. 32-1). Mr. Reich sent communications from his office in California. (Docket No. 32-2). But, these communications may not even suffice to form an enforceable contract under the laws of California or Pennsylvania.

To this end, both jurisdictions recognize the legal principle that an agreement premised on multiple contingencies which have yet to occur but may take place in the future constitutes, at most, preliminary negotiations that are not enforceable because the parties have not reached a "meeting of the minds" sufficient to bind the parties.  *See e.g., Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213-14, 45 Cal. Rptr. 3d 692, 703 (Cal. App. 6th 2006) ("Clearly there was no expression of mutual consent to create a company without investor financing, which in turn could not be obtained without first ironing out the details of the contemplated network of relationships. Because essential terms were only sketched out, with their final form to be agreed upon in the future (and contingent upon third-party approval), the parties had at best an 'agreement to agree,' which is unenforceable under California law."); *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998) (citation omitted) ("it is well established [under Pennsylvania law] that evidence of preliminary negotiations or a general agreement to enter a binding contract in the future fail as enforceable contracts because the parties themselves have not come to an agreement on the essential terms of the bargain and therefore there is nothing for the court to enforce."); *GMH Associates, Inc. v. Prudential Realty Grp.*, 2000 PA Super 59, ¶ 28, 752 A.2d 889, 900 (2000) ("there was no mutual assent between the parties as to essential terms or the subject matter of the transaction and that all issues surrounding the structure of the proposed transaction had not been closed" including approval by the corporate officers, law department and board finance committee).

As the Court has already explained above, this deal was wholly contingent upon the transfer of funds between the two trusts, a transaction which required the approval of Bessemer Trust Company of Florida, and the signing of releases by the residual beneficiaries, including Plaintiffs. (Docket No. 1 at ¶¶ 7-10).  These contingencies are clearly set forth in the parties'

communications. (*See* Docket No. 32-1 at 1 (text from M. Rabner "I thought the offer was 400,000 upon signing and trust being moved unless I misunderstood"); 32-2 at Condition (a) ("Lisa and Brian promptly sign and return the waiver and release requested by the Bessemer Trust Company to permit the transfer…")). The release that was circulated and not signed has signature lines for all of Mrs. Kaplan's sons and grandchildren. (Docket No. 39-2). Hence, the Court cannot conclude that a binding contract was formed under these facts let alone that a substantial part of the events related to such contract formation took place in Pittsburgh.

In any event, the law of this Circuit is well settled that for venue purposes the failure to remit funds to a party takes place in the location from where the funds were to be sent and not the location of the receiving party. *See Cottman Transmission Sys.,* 36 F.3d 291 at 295 ("The omissions that Cottman cites—Martino's failure to return various materials and failure to remit payments—actually occurred in Michigan, not in Pennsylvania. Even though the result was Cottman's non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan."); *see also Intertran Corp. v. Railquip, Inc.*, No. 1:CV-08-0684, 2008 WL 3981493, at *6 (M.D. Pa. Aug. 22, 2008) (same). The $400,000.00 at issue in this case needed to travel from the Florida-based Kaplan Trust to the California-based 2014 Revocable Trust before $200,000.00 would have been remitted to Elisabeth Rabner in Pittsburgh and $200,000.00 to her brother, Brian Kaplan, in the District of Columbia. Similarly, the alleged failure of Attorney Reich to forward the settlement papers to Monte Rabner took place in California, not Pittsburgh. Because none of these events occurred in Pennsylvania, venue does not lie here.

Overall, the Court concludes that a substantial part of the events and omissions at issue in this case did not take place in this District and that this venue is improper. *See* 28 U.S.C. §

1391(b)(1).  Pursuant to 28 U.S.C. § 1406(a) this Court has discretion to dismiss the action or transfer it to any district where the case could have been brought which would include the United States District Court for the Central District of California, Los Angeles Division.  But, as the Court outlined above, it is not clear that a federal district court would have subject matter jurisdiction over this lawsuit in the event that it is refiled making transfer inappropriate.  Accordingly, Defendants' motion to dismiss is also granted on the basis of improper venue and this case will be dismissed, without prejudice.

      C.    *Final Considerations*

The Court has set forth a multitude of its reasons why it believes that dismissal of this lawsuit is the most appropriate course of action.  Even if the Court were incorrect on these points as a matter of law, it would, alternatively, exercise its discretion to transfer this case to the United States District Court for the Central District of California, Los Angeles Division under the discretionary transfer statute, 28 U.S.C. § 1404(a).

The Court strongly believes that any jurist applying and weighing the private and public factors under *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) to the circumstances of this case would conclude that if this litigation should take place at all, it must be litigated in a venue as near to Mrs. Kaplan's residence in Beverly Hills as possible.  Again, Mrs. Kaplan is the sole present beneficiary of the trust fund, 89 years old and in failing health, including diminished eyesight resulting from macular degeneration.  (Docket Nos. 13 at ¶ 3; 34-1 at ¶ 3).  She has extraordinary medical needs and must utilize around $20,000 a month of these funds for her care. (Docket No. 13 at ¶ 4; 41 at 22).  Meanwhile, Plaintiffs have no present entitlement to any money at all out of the Kaplan Trust.  They are residual beneficiaries that must await their grandmother's death before they can collect their share of the money per the terms of the trust

agreement. The only reason that this opportunity for Plaintiffs to try to collect money immediately arose was due to estate planning maneuvers by California based attorneys advising that the family should try to avoid paying a $750,000.00 "generation skipping tax" which likely would have inured to Plaintiffs' benefit, preserving additional funds for distribution. (Docket Nos. 11, 41).

Only one of the Plaintiffs, Elisabeth Rabner, even lives in this District. The Court fails to see how her venue preference and convenience of a home forum would outweigh the needs of her grandmother given the circumstances. *See Jumara*, 55 F.3d at 879-80. All of the remaining private and public factors clearly favor of such a transfer. *Id.*

Simply put, if Plaintiffs truly want their money out of the trust now, or have legitimate concerns about their grandmother's capacity, how their uncles are handling their grandmother's assets or their fiduciary obligations to her, they should bring their suit in the Probate Department of the Superior Court in Los Angeles County. Otherwise, Plaintiffs should be satisfied with the status quo in that they are the beneficiaries of a trust and stand to receive a substantial sum of money due to the hard work, success and planning of their forbearers.

V.  CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is granted. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date:  April 22, 2016

cc/ecf:  All counsel of record.